Filed 1/25/21  Steed v. Steed CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ERIN E. STEED,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AARON B. STEED,<br><br>    Defendant and Respondent. | 2d Civ. No. B300907<br>(Super. Ct. No. 18FL-0394)<br>(San Luis Obispo County) |

In this interlocutory appeal, wife challenges the trial court's rulings that the termination of the parties' premarital agreement was procured by undue influence.  We affirm.

### FACTS

Aaron Steed (Husband) started his business, Meathead Movers (Meathead), with his brother Evan in 1997 when Husband was a junior in high school.  Meathead became a successful moving company.

Husband and his future wife Erin Steed (Wife) began dating in 2005.  Wife had a bachelor's degree in accounting and business.  She became a certified paralegal and worked for law

firms in that capacity. Husband had taken a few college courses but never earned a degree.

In 2006, Wife began working in accounting for Meathead. The parties became engaged later that year. The parties executed a premarital agreement (PMA). In negotiating and executing the PMA, each party was represented by counsel.

The PMA provided that neither party would obtain a community property interest in the other party's separate property by virtue of their efforts during marriage. At the time the parties executed the PMA, Husband's separate property, including Meathead, was valued at $3 million. Wife had very little separate property.

The parties married in 2008. Wife became the controller of Meathead. When the company needed lawyers with different specialties, she developed a "legal bench." She managed the large legal and human resource problems for the company.

Husband discussed all business and personal decisions with Wife. He relied on her business and legal education and experience. He would immediately sign whatever documents she instructed him to sign. He placed trust and confidence in her.

Meathead's income continued to increase each year. Between 2008 and 2012, Meathead enjoyed significant growth in gross income, size, and number of employees.

During the marriage, Wife would complain that she was not building anything. She was just an employee building Husband's business. She wanted to terminate the PMA, but he refused.

On April 23, 2012, Wife presented Husband with a termination of the PMA form. She did not seek advice of legal counsel. Instead, she downloaded the form from a legal website.

She filled out the form and walked it eight feet from her desk to Husband's desk at the Meathead offices. She handed the document to Husband, who immediately reached for a pen to sign it. She told him to stop and read it. He read the document and signed it. Then Wife and two witnesses signed it. The entire transaction took 10 to 15 minutes.

Husband testified he did not want to terminate the PMA. He denied ever seeing, reading, signing, or discussing the PMA termination document.

In April 2015, the parties, assisted by counsel, executed estate planning documents, including an agreement transmuting all their property into community property. Husband believed the transmutation agreement terminated the PMA.

The parties' marriage broke down and they separated June 26, 2018.

## PROCEDURE

Husband filed for dissolution of marriage and requested a bifurcated trial on the validity of the PMA termination and transmutation agreements. The trial court bifurcated the trial on the validity of the PMA termination agreement.

## RULING

The trial court found that Husband signed the PMA termination; the presumption of undue influence attached; and Wife failed to rebut the presumption because she did not fully and fairly disclose the relevant facts to ensure Husband understood the effect of the PMA termination agreement.

We granted Wife's motion to appeal the interlocutory ruling. (Fam. Code, § 2025[1]; Cal. Rules of Court, rule 5.392.)

---

[1] All statutory references are to the Family Code.

# DISCUSSION

## I

### *Standard of Review*

The existence and scope of a fiduciary duty are questions of law that we review de novo. (*In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 144.) Whether a fiduciary duty has been breached is a question of fact that we review under the substantial evidence rule. (*Ibid.*) Under the substantial evidence rule, we view the evidence in a light most favorable to the trial court's ruling, resolving all conflicts in the evidence and all reasonable inferences that may be drawn from the evidence in favor of the decision. (*Ibid.*)

## II

### *Presumption of Undue Influence*

Section 721, subdivision (b) provides in part, "[I]n transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."

If one spouse secures an advantage from a transaction with the other spouse, a presumption that the advantaged spouse exercised undue influence arises. (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.) The advantaged spouse must prove by a preponderance of the evidence that the disadvantaged spouse's action was freely and voluntarily made, with full knowledge of all the facts, and with a complete understanding of the effects of the transaction. (*Ibid.*) Upon such failure of proof, the transaction will be set aside. (*Ibid.*)

Wife attempts to convince us that she derived no advantage from the termination of the PMA. She argues the termination did not transfer a single dollar to her. That may be true, but it made possible the transfer of potentially millions of dollars to her. Prior to the PMA termination agreement, Wife complained to Husband that she was only an employee of Meathead, that she was not building anything of her own, and that she was just building Husband's business. She wanted to terminate the PMA so that she could obtain an interest in the business. That interest would come out of Husband's interest in Meathead. Such business opportunities have monetary value.

Wife's reliance on *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461 is misplaced. In *Brandes*, wife did not receive an apportionment of the increase in the value of husband's separate property business because the increase was due to factors other than community efforts. (*Id.* at p. 1477.)

Wife argues *Brandes* shows it was "pure speculation" that the community would ultimately benefit from the termination of the PMA, and that this "hunch" cannot be conflated with unfair advantage.

But Wife was intimately familiar with Meathead and its potential for growth. She must have been aware that it was highly likely she would profit at Husband's expense from the termination of the PMA. It was Wife who wanted to terminate the PMA so that she could have part of the business.

Wife argued there is no evidence to support the trial court's finding that with a stroke of the pen she was enriched by millions of dollars. But the evidence shows that Meathead was a successful and growing business. If Wife was not enriched by

millions of dollars, she was at least enriched by a substantial amount.  It is irrelevant by how much she was enriched.

It is absurd to argue that it was "pure speculation" or a "hunch" that Wife would benefit.  Even a "possible benefit" raises the presumption of undue influence.  (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630.)  Here the trial court could reasonably conclude Wife's benefit was more than possible; it was highly likely.

The trial court correctly found that there is a presumption of undue influence.

## III

### *Failure to Rebut Presumption*

The trial court found that Wife failed to rebut the presumption of undue influence.  Wife's challenge to the finding is based on a view of the evidence in a light most favorable to herself.  But that is not how we view the evidence.

In viewing the evidence, we look only to the evidence supporting the prevailing party.  (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.)  We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact.  (*Ibid.*)  Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.  (*McIntyre v. Doe & Roe* (1954) 125 Cal.App.2d 285, 287.)  The trier of fact is not required to believe even uncontradicted testimony.  (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Because we disregard evidence that does not support the judgment or order as not credible, it is virtually impossible for

the party with the burden of proof to succeed in attacking the sufficiency of the evidence on appeal.

Wife's argument that there was no substantial evidence of undue influence misses the point. Undue influence is presumed. There need not be any evidence of actual undue influence for Husband to prevail.

In any event, there is substantial evidence when viewed in a light most favorable to the order from which the trial court could reasonably conclude there was actual undue influence. Wife is a college graduate with legal training. Husband is a high school graduate with no legal training. Wife complained that she was only an employee and had no share in Meathead. She had access to a "bench" of attorneys; yet she selected to prepare the PMA termination agreement herself, thus depriving Husband of the benefit of legal counsel. She handed the agreement to Husband at work without warning. Although she told him to read it, she did not advise him to seek legal counsel before signing. The entire transaction lasted only 10 to 15 minutes. The agreement was entirely one-sided. She gave up nothing to obtain a share in a successful business.

## DISPOSITION

The judgment (order) is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.          PERREN, J.


7.

Erin M. Childs, Commissioner

Superior Court County of San Luis Obispo

_____

Herring Law Group, Ruston T. Imming; Garrett C. Dailey for Plaintiff and Appellant.

Barnick | Hodges Law Corporation, Whitney Northington Barnick; Helbert & Bodney, David A. Bodney for Defendant and Respondent.